# 17CV 157

## PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

## United States District Court for the Southern District of New York

| Name | Prisoner Identification No. |
|---|---|
| *Lyxon Chery* | *13A0920* |

Place of Confinement

*Fishkill Correctional Facility*
*P.O. Box 1245, Beacon, NY 13508*

| Name of Petitioner (include name under which convicted) | | Name of Respondent (warden or superintendent of your prison) |
|---|---|---|
| *Lyxon Chery* | **v.** | *Robert F. Cunningham* |

### PETITION

1. Name and location of court which entered the judgment of conviction under attack *Supreme Court New York County, 100 Centre St. N.Y.C. 10013*

2. Name and address of lawyer who represented you _____

3. Date of judgment of conviction *February 19, 2013*

4. Length of sentence *Five years with two-and-a-half PRS*

5. Nature of offense involved (all counts) *Robbery in the First degree (2 counts) Penal Law Sections 160.15 (3); 160.10 (1), (2) (a).*

6. What was your plea? (Check one)
   (a) Not guilty ☑
   (b) Guilty ☐
   (c) Nolo contendere ☐

If you entered a guilty plea to one count of indictment, and not a guilty plea to another count of indictment, give details:

_____

RECEIVED JAN - 6 2017 PRO SE OFFICE

7. If you pleaded not guilty, what kind of trial did you have?  (Check one)
   (a)  Jury          ☑
   (b)  Judge only    ☐

8. Did you testify at the trial?
   Yes ☑     No ☐

9. Did you appeal from the judgment of conviction?
   Yes ☑     No ☐

10. If you did appeal, answer the following:

   (a)  Name of court  *APPELLATE DIVISION: FIRST DEPARTMENT*

   (b)  Name and address of lawyer who represented you  *Robert S. Dean, Esq., Center for Appellate Litigation, 74 Trinity Place, N.Y., N.Y. 10006*

   (c)  Result  *AFFIRMED April 16, 2015*

   (d)  Date of result and citation, if known  *April 16, 2015 - 127 A.D. 3d 533*

   (e)  Grounds raised  *Please briefs Attached/Enclosed*


   (f)  If you sought further review of the decision by appeal to a higher state court, please answer the following:

      (1) Name of court  *Court of APPEALS - STATE OF NEW YORK*

      (2) Name and address of lawyer who represented you  *Robert S. Dean, Esq.*

      (3) Result  *AFFIRMED*

      (4) Date of result and citation, if known  *Decided Nov. 1, 2016, AFFIRMED*

      (5) Grounds raised  *Please see enclosed Briefs*



   (g)  If you filed a petition for Writ of Certiorari in the United States Supreme Court, please provide the date the petition was filed and the date of result and citation, if known

      *Not Applicable*

      (1) Name and address of lawyer who represented you  *N/A*

11. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☐   No ☑

12. If your answer to 11 was "yes," give the following information:

(a) (1) Name of court _____ N/A _____

(2) Name and address of lawyer who represented you _____ N/A _____

(3) Nature of proceeding _____ N/A _____

(3) Grounds raised _____ N/A _____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐        No ☐

(5) Date motion was filed with the Court _____ N/A _____

(6) Date and result of motion _____ N/A _____

(b) As to any second petition, application or motion give the same information:

(1) Name of court _____ N/A _____

(2) Name and address of lawyer who represented you _____ N/A _____

(3) Nature of proceeding _____ N/A _____

(4) Grounds raised _____ N/A _____

_____

_____

_____

(5) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐            No ☐

(6) Date motion was filed with the Court _____ N/A _____

(7) Date and result of motion _____ N/A _____

(c) Did you appeal to the highest state court having jurisdiction the decision on any petition, application or motion?

    (1) First petition, etc.        Yes ☐      No ☑

    (2) Second petition, etc.    Yes ☐      No ☑

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A _____

_____ " " _____

_____ " " _____

_____ " " _____

_____ " " _____

13.  **STATE EVERY GROUND ON WHICH YOU CLAIM THAT YOU ARE BEING HELD UNLAWFULLY .
EACH GROUND SHOULD BE SET FORTH UNDER A SEPARATELY NUMBERED PARAGRAPH . IF YOU
ARE RAISING THE SAME GROUNDS THAT YOU RAISED ON DIRECT APPEAL , YOU SHOULD
ATTACH A COPY OF YOUR STATE COURT APPELLATE BRIEF OR ITS TABLE OF CONTENTS . YOU
MUST EXHAUST YOUR STATE COURT REMEDIES ON EACH GROUND YOU ARE CLAIMING YOU ARE
BEING HELD UNLAWFULLY .**

Ground(s):

*PLEASE GROUNDS RAISED IN ATTACHED AND
ENCLOSED briefs.*

_N/A_

(attach additional papers as necessary)

14.     **TIMELINESS OF PETITION:** If your judgment of conviction was made final over one-year ago, you must set forth below why the one-year statute of limitations as codified in 28 U.S.C. § 2244(d) does not bar your petition.*

_This Section-Part is Not Applicable_

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as codified in 28 U.S.C. § 2244(d) provides in part that:

(1)  A 1- year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made

retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

15. Do you have a petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes ☐   No ☑

(a) If so, give the name and location of court in which the petition or appeal is pending _____ N/A

_____ N/A _____

16. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐   No ☑

(a) If so, give name and location of court which imposed sentence to be served in the future: _____

_____ N/A _____

(b) Give date and length of the above sentence: _____ N/A

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

12/31/2016
(date)

_____
Signature of Petitioner

13-A-0920
Inmate Number

Fishkill Corr. Facility, P.O. Box 1245
Beacon, N.Y. 12508
Address

I declare under penalty of perjury that on 12/31/16 , I delivered this petition to prison authorities to be
(date)

mailed to the United States District Court for the Southern District of New York.

_____
Signature of Petitioner

*To be argued by*
MARISA K. CABRERA
(Time Request: 15 Minutes)

# Court of Appeals

## STATE OF NEW YORK

### THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

- against -

### LYXON CHERY,

Defendant-Appellant.

## REPLY BRIEF FOR DEFENDANT-APPELLANT

**Robert S. Dean**
**Attorney for Defendant-Appellant**
**Center for Appellate Litigation**
**120 Wall Street, 28th Floor**
**New York, NY 10005**
TEL (212) 577-2523
FAX (212) 577-2535

MARISA K. CABRERA
*Of Counsel*

January 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 1

    POINT I
        THE TRIAL COURT ERRED WHEN IT ALLOWED THE PROSECUTION TO
        IMPEACH MR. CHERY WITH OMISSIONS MADE DURING THE COURSE
        OF A SPONTANEOUS, PRE-MIRANDA-WARNING STATEMENT (replying
        to respondent's Point I). . . . . . . . . . . . . . . 1

    POINT II
        THE COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED
        COUNSEL'S TIMELY REQUEST FOR A MISSING WITNESS
        INSTRUCTION WHERE THE NON-TESTIFYING OFFICER WOULD HAVE
        PROVIDED NON-CUMULATIVE TESTIMONY IN THIS CASE, WHERE THE
        FACTS WERE SHARPLY DISPUTED (replying to respondent's
        Point II). . . . . . . . . . . . . . . . . . . . . . 7

    POINT III
        THE EVIDENCE WAS LEGALLY INSUFFICIENT TO ESTABLISH THAT
        ALHANAH SUFFERED SUBSTANTIAL PAIN (replying to
        respondent's Point III). . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

Cases

Matter of Phillip A., 49 N.Y.2d 198 (1980) . . . . . . . . . 11

People v. Bornholdt, 33 N.Y.2d 75 (1973) . . . . . . . . 2, 4

People v. Brown, 34 N.Y.2d 658 (1974) . . . . . . . . . . . 9

People v. Cephas, 90 A.D.3d 557 (1st Dep't 2011) . . . . . . 8

People v. Chavis, 91 N.Y.2d 500 (1998) . . . . . . . . . 7-8

People v. Chery, 127 A.D.3d 533 (1st Dep't 2015) . . . . . . 6

People v. Chiddick, 8 N.Y.3d 445 (2007) . . . . . . . . . 12

People v. Concepcion, 17 N.Y.3d 192 (2011) . . . . . . . . 7-8

People v. Conyers, 52 N.Y.2d 454 (1981) . . . . . . . . . . 4

People v. Conyers, 49 N.Y.2d 174 (1980) . . . . . . . . . . 4

People v. DeGeorge, 73 N.Y.2d 614 (1989) . . . . . . . . . . 4

People v. LaFontaine, 92 N.Y.2d 470 (1998) . . . . . . . . . 8

People v. Muhammad, 17 N.Y.3d 532 (2011) . . . . . . . . . . 8

People v. Nieves, 67 N.Y.2d 125 (1986) . . . . . . . . . 7-8

People v. Pavone, 2015 N.Y. Slip Op. 09315 (Dec. 17, 2015) . 3-6

People v. Payne, 3 N.Y.3d 266 (2004) . . . . . . . . . . . . 6

People v. Rodriguez, 38 N.Y.2d 95 (1975) . . . . . . . . . . 9

People v. Rothschild, 35 N.Y.2d 355 (1974) . . . . . . . . . 2

People v. Santiago, 936 N.Y.S.2d 37 (1st Dep't 2012) . . . . 8

People v. Savage, 50 N.Y.2d 673 (1980) . . . . . . . . 2, 4-5

People v. Thomas, 21 N.Y.3d 226 (2013) . . . . . . . . . . 10

People v. Williams, 25 N.Y.3d 185 (2015) . . . . . . . . 2, 4

ii

## Statutes

C.P.L. § 470.05 . . . . . . . . . . . . . . . . . . . 5-7, 11

C.P.L. § 470.15(1)  . . . . . . . . . . . . . . . . . . 7-8

COURT OF APPEALS
STATE OF NEW YORK
-----------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,     :

              Respondent,     :

       -against-     :

LYXON CHERY,     :

          Defendant-Appellant.     :

-----------------------------------------x

### PRELIMINARY STATEMENT

This brief is submitted in reply to Respondent's Brief ("RB") filed on December 23, 2015.

### ARGUMENT

### POINT I

THE TRIAL COURT ERRED WHEN IT ALLOWED THE PROSECUTION TO IMPEACH MR. CHERY WITH OMISSIONS MADE DURING THE COURSE OF A SPONTANEOUS, PRE-MIRANDA-WARNING STATEMENT (replying to respondent's Point I).

Contrary to respondent's claims, the test for whether a defendant can be impeached by an "unnatural omission" is not simply predicated upon whether "the defendant omitted the most salient exculpatory allegations from his pre-trial statement" at that moment. RB at 33-34, 37. Rather, as this Court has held, determining whether an omission is unnatural requires an assessment of the circumstances under which the statement was provided and

1

whether the substance of the statement provided was incriminating. See, e.g., People v. Savage, 50 N.Y.2d 673 (1980) (citing the "incriminatory" nature of the statements as well as a defendant's "opportunity to inform the officer of his involvement in the crime" in determining whether impeachment by omission was proper). Historically, this Court has precluded the prosecution from impeaching a defendant by omission "absent unusual circumstances." People v. Williams, 25 N.Y.3d 185, 191 (2015) (citing People v. Savage, 50 N.Y.2d 673 (1980), and People v. Rothschild, 35 N.Y.2d 355 (1974), as two unusual scenarios in which impeachment by omission has been upheld). Respondent's argument rests upon the incorrect notion that Mr. Chery's impeachment by omission was proper simply because there were more favorable facts that he neglected to include during the course of his spontaneous, pre-Miranda-warning statement. However, respondent's rule would allow defendants to be subject to impeachment for omitting any mitigating facts even where there was virtually no opportunity to include them - a position this Court has previously rejected. See People v. Bornholdt, 33 N.Y.2d 75, 88 (1973).

In Bornholdt, this Court held that a witness may only be impeached by omission when "the witness' attention was called to the matter and . . . specifically asked about the facts embraced in the question propounded at trial." 33 N.Y.2d at 88. While respondent seeks to distinguish Bornholdt, on the grounds that Mr.

2

Chery "was not simply a witness describing what he had seen or experienced," (RB at 34), the principles upheld there are applicable in this case: "a witness may not be impeached simply by showing that he omitted to state a fact, or to state it more fully at a prior time." 33 N.Y.2d at 88. Further, respondent's argument suggests that Mr. Chery would have had more protections against impeachment by omission if he had been a witness, rather than a defendant – a position that runs counter to fundamental constitutional principles.

Moreover, in People v. Pavone, 2015 N.Y. Slip Op. 09315, *5-6 (Dec. 17, 2015), this Court recently reaffirmed the tremendous protections our State accords to a defendant's silence, holding that using a defendant's silence for impeachment violates "state due process guarantees." Respondent's attempts to distinguish and dismiss Pavone fail. RB at 37 n.18.

In Pavone, this Court explicitly "reject[ed] the People's artificial distinction between defendants who are arrested and remain silent before Miranda warnings have been provided, and those who remain silent afterwards" – the same argument respondent advances on this appeal. Id. at *8; RB at 30-31. Here, respondent contends that omissions made during a pre-Miranda statement are more probative than a defendant who has received Miranda warnings as the "defendant has not been assured by the authorities that his silence would not be used against him." RB at

30-31. As a general matter, the probative value of silence is very limited as "[o]nce a defendant is arrested, the defendant is confronted by law enforcement and the reasons for the defendant's silence are no less ambiguous." Pavone, 2015 N.Y. Slip Op. 09315 at *8. Indeed, this Court has historically expressed its concerns "about the inherent unfairness attendant to the use of a defendant's pretrial silence" whether used "as part of the case-in-chief or for impeachment purposes." Id. at *7; see People v. Williams, 25 N.Y.3d 185 (2015); People v. DeGeorge, 73 N.Y.2d 614, 619 (1989); People v. Conyers, 52 N.Y.2d 454, 458 (1981); People v. Conyers, 49 N.Y.2d 174, 181 (1980).

Additionally, respondent argues that the non-incriminating nature of Mr. Chery's initial statement is irrelevant to the Savage analysis. RB at 35. However, as Pavone now makes clear, the substance of the statement is significant in determining whether impeachment by omission is appropriate. Just as in Pavone, Mr. Chery's case "is not an example, as the People suggest, of defendant contradicting a prior statement about what he remembered." 2015 N.Y. Slip Op. 09315 at *8 (emphasis added). Since respondent does not even dispute that Mr. Chery's statements at trial did not contradict his initial spontaneous statement to the officer, but that he simply "omit[ted] the facts that would best accomplish [his] goal[]" of exculpating himself, impeachment was not warranted. RB at 35. Thus, under Bornholdt, Savage, and

4

now Pavone, and in light of this State's ardent protection of a defendant's right to remain silent after arrest, the prosecution's impeachment of Mr. Chery with omissions from his spontaneous, non-incriminating statement was error.

This error was fully preserved for appellate review. First, contrary to respondent's contention, defense counsel's distinction of Savage in response to the prosecution's motion satisfied the preservation requirements of C.P.L. § 470.05, whether or not counsel explicitly stated "that he opposed the application." RB at 23. As evinced through the prosecution's response and the court's decision that the post-Miranda-warning distinction was irrelevant to the analysis, all parties understood counsel's arguments to be an objection to the application of Savage in light of the facts of this case (A.292-93). See C.P.L. § 470.05(2) ("Such protest need not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal."). Counsel's statement fully satisfied the purposes of preservation.

Moreover, respondent's assertion that defense counsel needed to further explain "why it mattered that no Miranda warnings had been given" (RB at 24) "elevate[s] preservation to a formality that would bar an appeal even though the trial court . . . had full opportunity to review the issue in question" – a rationale this

5

Court explicitly rejected in <u>People v. Payne</u>, 3 N.Y.3d 266, 273 (2004). Here, the court immediately rejected defense counsel's arguments that the pre- versus post-<u>Miranda</u> warning distinction was significant, indicating that it understood counsel's position and did not need further legal arguments on the matter to reach its determination (A.293). <u>See</u> C.P.L. § 470.05(2) ("[A] party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered."). Notably unmentioned by respondent, is that the Appellate Division squarely addressed the merits of the issue, with no discussion of preservation whatsoever. <u>See</u> <u>People v. Chery</u>, 127 A.D.3d 533 (1st Dep't 2015).

Finally, for the reasons discussed in Mr. Chery's original brief, the error cannot be deemed harmless. <u>See</u> Main Brief at 30-33. Indeed, Mr. Chery satisfies both the non-constitutional and certainly the more lenient constitutional standard now available in light of the Court's recent decision in <u>Pavone</u> holding that the prosecution's "use of defendant's silence constitute[s] a violation of his state constitutional rights." 2015 N.Y. Slip Op. 09315 at *9.

6

Accordingly, for the reasons stated above and in Point I of the original brief, Mr. Chery's judgment of conviction should be reversed and a new trial ordered.

<u>POINT II</u>

THE COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED COUNSEL'S TIMELY REQUEST FOR A MISSING WITNESS INSTRUCTION WHERE THE NON-TESTIFYING OFFICER WOULD HAVE PROVIDED NON-CUMULATIVE TESTIMONY IN THIS CASE, WHERE THE FACTS WERE SHARPLY DISPUTED (replying to respondent's Point II).

As a preliminary matter, respondent's argument on appeal that a missing witness instruction was not warranted because Mr. Chery "failed to show that Tunis could have provided material" testimony, is unpreserved for this Court's review. RB at 50-52. Rather, the prosecution only made two arguments below: that Tunis' testimony would be "cumulative" and that Mr. Chery did not "show[]" that the testimony would be "hurtful to the People's case and helpful to [Mr. Chery's] case." (A.329). Since this argument was not raised by the prosecution below, it is not preserved for appellate review and cannot now be addressed for the first time on appeal. <u>See</u> C.P.L. § 470.05; <u>People v. Chavis</u>, 91 N.Y.2d 500, 506 (1998); <u>People v. Nieves</u>, 67 N.Y.2d 125, 134-36 (1986).

In addition, because the materiality issue was not decided adversely to Mr. Chery these claims cannot now be considered by this Court. <u>See</u> C.P.L. § 470.15(1); <u>People v. Concepcion</u>, 17

N.Y.3d 192 (2011); <u>People v. LaFontaine</u>, 92 N.Y.2d 470 (1998); <u>Chavis</u>, 91 N.Y.2d at 506; <u>see also</u>   <u>Nieves</u>, 67 N.Y.2d at 134-36; <u>People v. Santiago</u>, 936 N.Y.S.2d 37 (1st Dep't 2012).   Criminal Procedure Law § 470.15(1) bars this Court, "from affirming a judgment, sentence or order on a ground not decided <u>adversely</u> to the appellant by the trial court." <u>Concepcion</u>, 17 N.Y.3d at 195 (emphasis in original); <u>see</u> <u>People v. Muhammad</u>, 17 N.Y.3d 532, 536-37 (2011); <u>Santiago</u>, 936 N.Y.S.2d at 37; <u>People v. Cephas</u>, 90 A.D.3d 557 (1st Dep't 2011).   This imposes a "legislative restriction" on the power of appellate courts "to review issues either decided in an appellant's favor, or not ruled upon, by the trial court." <u>Concepcion</u>, 17 N.Y.3d at 195 (quoting <u>LaFontaine</u>, 92 N.Y.2d at 474).   Since the trial court denied counsel's request on the two reasons the prosecution raised below and not on materiality, this Court does not have the jurisdiction to address this claim.

In any event, respondent's claims are without merit.   First, respondent's contention that Tunis' testimony would have been cumulative as the facts were not in sharp dispute is contravened by the record.   Respondent attempts to dismiss "any inconsistencies in the observations and recollections of the witnesses" at trial as the result of differences in perspectives.   RB at 51-52.   However, both Zapata and Alshmlami were present when Gutierrez and Tunis arrived at the scene and each spoke to the officers immediately

before they arrested Mr. Chery (A.115, 123-24).   Thus, their testimony that they did not observe a white envelope recovered from Mr. Chery as well as the numerous discrepancies among the witnesses regarding the extent of Alhanah's injuries and Mr. Chery's possession of the metal object were material facts in sharp dispute.  See People v. Rodriquez, 38 N.Y.2d 95, 101 (1975).

    Respondent also incorrectly claims that "no witnesses, other than [Mr. Chery]" testified that he did not have a metal object in his hands.  RB at 51.  In fact, Alshmalami testified that Mr. Chery and Alhanah were "holding each other" and that "[t]hey had a piece of wood and they didn't [] let it go from each other."  (A.245) (emphasis added).  Zapata also agreed that the object in Mr. Chery's hands at the time of the incident was "consistent with . . . a wooden stick."  (A.116).  As such, it is of little significance that Tunis would not have "observed anything outside of the presence of Gutierrez, who did testify" as what Tunis observed would have added a necessary clarifying perspective to the contradictory versions of events offered by the various witnesses at trial.  RB at 50.  See People v. Brown, 34 N.Y.2d 658 (1974) (finding a non-testifying officer's testimony would not be cumulative or trivial where he "was an eyewitness to the transaction and was readily available to the prosecution" even though another officer, who "had acted jointly" with him, had testified at trial).  Therefore, as counsel argued below, had Tunis

testified, he would be "contradicting somebody" in light of the factual discrepancies among the witnesses, warranting a missing witness instruction.

Moreover, respondent's claim that the court did not require that Mr. Chery make a showing of proof as to the favorability of Tunis' testimony to the prosecution is belied by the record.  RB at 53.  Contrary to respondent's contention, the court was not simply "asking defense counsel if there was 'something' counsel could 'point out . . . a reason why [Tunis's] testimony would not be cumulative." RB at 53.  Rather, a basic reading of the record shows that the trial court had already made its determination as to whether the testimony was cumulative and then affirmatively adopted the prosecution's second argument, "that there is no showing that Officer [Tunis]'s testimony would be hurtful to the People's case and helpful to the defendant's case" when the court stated, "[r]ight.  That's the other reason." (A.329-30 (emphasis added)).  Since respondent concedes that under People v. Thomas, 21 N.Y.3d 226 (2013), Mr. Chery was not "required to establish the content of Tunis's testimony of that it would actually have harmed the People," the court erred when it imposed this burden upon the defense.  RB at 53.

Finally, respondent's arguments that this claim is partially unpreserved is meritless.  Defense counsel preserved these issues for appellate review through his timely request for the charge upon

learning that the prosecution did not intend to call Tunis as a trial witness (A.75-76). During the charge conference, counsel explained that a missing witness instruction would be necessary because "[n]o matter what [Tunis] says, he is going to be contradicting somebody because there are different versions of what the scene was when the police arrived," especially in light of the fact that he individually "interviewed the complaining witness and we have no idea what was said" (A.327-28). Counsel's spot-on objection fully preserved this error for this Court's review. <u>See</u> C.P.L. § 470.05(2).

Since this error could not be deemed harmless for the reasons stated in Mr. Chery's original brief, the judgment of conviction must be reversed and a new trial ordered.

<u>POINT III</u>

THE EVIDENCE WAS LEGALLY INSUFFICIENT TO ESTABLISH THAT ALHANAH SUFFERED SUBSTANTIAL PAIN (replying to respondent's Point III).

Despite respondent's efforts on appeal, there is simply no "objective basis in the record [to] support[] the jurors' finding of physical injury" – a standard that respondent acknowledges it must meet to demonstrate substantial pain. RB at 59. <u>See</u> <u>Matter of Phillip A.</u>, 49 N.Y.2d 198 (1980). Contrary to respondent's claim, Mr. Chery is not suggesting that any one type of objective evidence is a "prerequisite" to find physical injury. RB at 64.

Rather, Mr. Chery contends only that the evidence introduced at trial did not meet this threshold.   Indeed, much of respondent's argument that it met the objective evidence corroboration requirement relies upon the conclusory fact of an assault having occurred, rather than examining the resultant pain and sustained injuries.  RB at 60.  However, a review of the objective evidence introduced at trial reveals the opposite – that Alhanah did not suffer substantial pain.

Unlike People v. Chiddick, 8 N.Y.3d 445, 447 (2007), which respondent relies heavily upon (RB at 59-61), Alhanah did not seek medical treatment for his injuries nor employ home treatments and remedies to address his injuries – a fact that the Chiddick Court deemed to be relevant in determining whether "pain was significant."  Similarly, Alhanah did not take time from work due to his injuries or preserve the allegedly lost photographs of his injuries.  Although the prosecution could have tried to satisfy its burden by eliciting at trial how long Alhanah experienced pain, it did not.  Now, respondent attempts to do so by speculating that Alhanah's assertion that he did not experience pain "for all 10 days" after the incident, "indicates that it continued for a significant portion of the ten days that his injuries lasted" – an inferential leap that has no support in the record.  RB at 61.

Although respondent contends that Alhanah's decision not to go to the hospital that night was "not a meaningful indication that

his injury was 'slight or trivial,'" respondent's concession that Alhanah only suffered "minor lacerations and bruising" only reaffirms Mr. Chery's position that the injuries did not meet the threshold to establish substantial pain. RB at 64. Since Alhanah only sustained "lacerations and bruising" that were so minor that they "could not have been meaningfully treated by a medical professional," it is evident that the physical injury element was not established. RB at 64.[1]

Viewing the evidence in the light most favorable to the prosecution, it is clear that the prosecution could not meet its burden due to the lack of objective evidence to support Alhanah's undefined, subjective claim that he suffered pain as a result of his injuries. Accordingly, for the reasons stated above as well as in Mr. Chery's main brief, the judgment of conviction for robbery in the second degree (count two) should be reversed, dismissed, and modified to robbery in the third degree.

---

[1] While Mr. Chery accurately stated in his original brief that Alashmlami testified "that Alhanah only had 'a little scratch on his neck and on his arm,' specifically his 'right elbow,'" respondent is correct that appellant mistakenly attributed statements relating to Alashmalmi's observations of Mr. Chery's face and body to the complainant's injuries (A.245-46). Main Brief at 47; RB at 66. Even so, this does not change the strength of Mr. Chery's position as "a little scratch on [Alhanah's] neck and on his arm" does not meet the substantial pain threshold and only proves that Alhanah sustained minor injuries during the course of the incident.

<u>CONCLUSION</u>

FOR THE REASONS SET FORTH IN POINT I, POINT II, AND IN THE ORIGINAL BRIEF, MR. CHERY'S JUDGMENT OF CONVICTION SHOULD BE REVERSED AND A NEW TRIAL ORDERED.  FOR THE REASONS STATED IN POINT III AND IN THE ORIGINAL BRIEF, THE JUDGMENT OF CONVICTION FOR ROBBERY IN THE SECOND DEGREE (COUNT TWO) SHOULD BE REVERSED, DISMISSED, AND MODIFIED TO ROBBERY IN THE THIRD DEGREE.

Respectfully submitted,


ROBERT S. DEAN
Center for Appellate Litigation


Marisa K. Cabrera
Of Counsel
January 2016

To be argued by:
**MARISA K. CABRERA**
(Time Request: 15 Minutes)

# Court of Appeals

## STATE OF NEW YORK

### THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

- against -

### LYXON CHERY,

Defendant-Appellant.

## BRIEF FOR DEFENDANT-APPELLANT

**Robert S. Dean**
**Attorney for Defendant-Appellant**
**Center for Appellate Litigation**
**120 Wall Street, 28th Floor**
**New York, NY 10005**
**TEL (212) 577-2523**
**FAX (212) 577-2535**

**MARISA K. CABRERA**
*Of Counsel*

September 2015

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . 1

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 5

    Court's Decision that Mr. Chery's Prior Statement is
    Admissible as a Spontaneous Statement . . . . . . . . . 5

    Trial Evidence . . . . . . . . . . . . . . . . . . . 6

        Prosecution's Case . . . . . . . . . . . . . . . 6

        Defense Case . . . . . . . . . . . . . . . . . 11

            Impeachment by Omission of Mr. Chery . . . . . 15

    Motion to Dismiss . . . . . . . . . . . . . . . . . 18

    Missing Witness Charge Request . . . . . . . . . . . . 19

    Jury Charge, Verdict and Sentence . . . . . . . . . . 21

    Appellate Division Decision . . . . . . . . . . . . . 22

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 24

    POINT I
        THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO
        IMPEACH MR. CHERY WITH OMISSIONS MADE DURING THE COURSE
        OF HIS PRE-MIRANDA, SPONTANEOUS STATEMENT TO THE
        RESPONDING OFFICER. U.S. CONST., AMENDS. V, XIV; N.Y.
        CONST., ART. I § 6; PEOPLE V. BORNHOLDT, 33 N.Y.2D 75
        (1973); PEOPLE V. SAVAGE, 50 N.Y.2D 673 (1980). . 24

    POINT II
        THE COURT'S REFUSAL TO ISSUE A MISSING WITNESS CHARGE FOR
        THE PROSECUTION'S FAILURE TO CALL THE RESPONDING OFFICER
        DENIED MR. CHERY A FAIR TRIAL IN THIS CASE WHERE THE
        FACTS WERE IN SHARP DISPUTE. U.S. CONST. AMEND. XIV;
        N.Y. CONST. ART. I, § 6. . . . . . . . . . . . . . 34

POINT III

     THE JURY'S VERDICT CONVICTING MR. CHERY OF ROBBERY IN THE SECOND DEGREE MUST BE SET ASIDE AS LEGALLY INSUFFICIENT WHERE THE PROSECUTION FAILED TO PROVE THAT THE COMPLAINANT SUFFERED PHYSICAL INJURY WHEN HE SUSTAINED BRUISING AND A CUT ON HIS HAND AND LEG, REFUSED MEDICAL TREATMENT, AND DID NOT MISS ANY DAYS OF WORK.   U.S. CONST. AMEND. XIV; N.Y. CONST., ART. I, § 6.   . . .   40

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . .   50

ii

## TABLE OF AUTHORITIES
### FEDERAL CASES

Miranda v. Arizona, 384 U.S. 436 (1966) . . . . . . .  26, 27, 33

Graves v. United States, 150 U.S. 118 (1893) . . . . . . . 34

Jackson v. Virginia, 443 U.S. 307 (1979) . . . . . . . 40, 41

Samuel v. LaValley, 2013 WL 550688 (E.D.N.Y. 2013) . . . . . 27

### STATE CASES

People v. Baksh, 43 A.D.3d 1072 (2d Dep't 2007) . . . . . . . 42

People v. Balan, 25 Misc.3d 88 (App. Term 1st Dep't 2009) . . 45

People v. Barber, 143 A.D.2d 450 (3d Dep't 1988) . . . . 28, 33

People v. Bornholdt, 33 N.Y.2d 75 (1973) . . . . . . . . 2, 29

People v. Brown, 145 A.D.2d 301 (1st Dep't 1988) . . . . 42, 47

People v. Chiddick, 8 N.Y.3d 445 (2007) . . . . . . . 23, 41, 42

People v. Contes, 60 N.Y.2d 620 (1983) . . . . . . . . . 41

People v. Contreras, 108 A.D.2d 627 (1st Dep't 1985) . . . . 48

People v. Conyers, 52 N.Y.2d 454 (1981) . . . . . . . . 25, 28

People v. Crimmins, 36 N.Y.2d 230 (1975) . . . . . . . . . 30

People v. DeGeorge, 73 N.Y.2d 614 (1989) . . . . . . . . . 25

People v. DiStefano, 252 A.D.2d 530 (2d Dep't 1998) . . . . . 41

People v. Gonzalez, 68 N.Y.2d 424 (1986) . . . . 34, 35, 36, 39

People v. Guidice, 83 N.Y.2d 630 (1994) . . . . . . . . . 23

People v. Hodge, 83 A.D.3d 594 (1st Dep't 2011) . . . . . . . 46

People v. Jimenez, 55 N.Y.2d 895 (1982) . . . . . . . . . 45

People v. Keen, 94 N.Y.2d 533 (2000) . . . . . . . . . . 36

People v. Kitching, 78 N.Y.2d 532 (1991) . . . . . . . . . . 38

People v. Lafontaine, 92 N.Y.2d 470 (1998) . . . . . . . . . 46

People v. Lanahan, 55 N.Y.2d 711 (1981) . . . . . . . . . . 29

People v. Lyxon Chery, 127 A.D.3d 533 (1st Dep't 2015) . passim

People v. McDuffie, 293 A.D.2d 287 (2d Dep't 2002) . . . . . 42

People v. Moore, 47 A.D.3d 403 (1st Dep't 2008) . . . . . . 46

Matter of Philip A., 49 N.Y.2d 198 (1980) . . . . . . . . . 42

People v. Pope, 174 A.D.2d 319 (1st Dep't 1991) . . . . . 41, 42

Matter of Robin B., 78 A.D.2d 679 (2d Dep't 1980) . . . . . 43

People v. Rodriguez, 38 N.Y.2d 95 (1975) . . . . . . . . 4, 37

People v. Rolando, 168 A.D.2d 578 (2d Dep't 1990) . . . . . 46

People v. Rothschild, 35 N.Y.2d 355 (1974) . . . . . . . . 25

People v. Sanders, 245 A.D.2d 471 (2d Dep't 1997) . . . . . 47

People v. Santiago, 221 A.D.2d 259 (1st Dep't 1995) . . . . 46

People v. Samba, 97 A.D.3d 411 (1st Dep't 2012) . . . . . . 48

People v. Savage, 50 N.Y.2d 673 (1980) . . . . . . . . passim

People v. Schulz, 4 N.Y.3d 521 (2005) . . . . . . . . . . . 41

People v. Tejada, 78 N.Y.2d 936 (1991) . . . . . . . . . . 46

People v. Thomas, 21 N.Y.3d 226 (2013) . . . . . . . . . . 38

People v. Vasquez, 88 N.Y.2d 561 (1996) . . . . . . . . . . 27

People v. Williams, 25 N.Y.3d 185 (2015) . . . . . . . . passim

People v. Young, 99 A.D.3d 739 (2d Dep't 2012) . . . . . . 45

## FEDERAL STATUTES

U.S. Const. Amend. V . . . . . . . . . . . . . . 2, 24, 49

U.S. Const. Amend. XIV . . . . . . . . . . . . . . passim


## STATE STATUTES

C.P.L. § 70.10(1) . . . . . . . . . . . . . . . . 41

C.P.L. § 450.90 . . . . . . . . . . . . . . . . . 2

N.Y. Const. art. 1, § 6 . . . . . . . . . . . 2, 34, 40, 49

Penal Law § 10.00(9) . . . . . . . . . . . . . 41, 47

COURT OF APPEALS
STATE OF NEW YORK
----------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK,          :

                Respondent,          :

        -against-          :

LYXON CHERY,          :

            Defendant-Appellant.          :

----------------------------------------x

## PRELIMINARY STATEMENT

By permission of the Honorable Eugene M. Fahey, Associate Judge of the Court of Appeals, granted on July 13, 2015, this appeal is taken from an order of the Appellate Division, First Department, People v. Lyxon Chery, 127 A.D.3d 533 (1st Dep't 2015).[1] That order, entered April 16, 2015, affirmed with opinion a judgment of the Supreme Court, New York County. Such judgment, rendered February 19, 2013, convicted appellant, Lyxon Chery, after a jury trial, of robbery in the first degree and two counts of robbery in the second degree (P.L. §§ 160.15(3); 160.10(1), (2)(a)), and sentenced him to an aggregate term of five years' imprisonment to be followed by two-and-a-half years' post-release supervision (Stolz, J., at Mapp/Huntley/Dunaway hearing; Conviser, J., at trial and sentencing).

---

[1] The Order Granting Leave to Appeal is reprinted in the Appendix at A.2. Citations to the Appendix are in parentheses preceded by "A."

This Court has jurisdiction pursuant to C.P.L. § 450.90 to review the questions involved. More particularly, the issues herein were preserved for appellate review by defense counsel's opposition to the prosecution's request to impeach Mr. Chery on omissions made during the course of his pre-<u>Miranda</u> warning statement (A.288-94), counsel's timely request for a missing witness instruction (A.75-76, 327-30), and counsel's motion to dismiss on the grounds that the prosecutor's evidence was legally insufficient as a matter of law to establish that the complainant suffered physical injury (A.252-54, 331-32).

Mr. Chery's motion to assign Robert S. Dean as counsel on appeal was granted by this Court on August 27, 2015. No motion for a stay of execution of sentence has been made. Mr. Chery is currently serving his sentence and has no known codefendants.

<u>QUESTIONS PRESENTED</u>

1.    Whether the trial court erred in permitting the prosecutor to impeach Mr. Chery with omissions made during the course of his pre-<u>Miranda</u>, spontaneous statement to the responding officer. U.S. Const., Amends. V, XIV; N.Y. Const., art. I § 6; <u>People v. Bornholdt</u>, 33 N.Y.2d 75 (1973); <u>People v. Savage</u>, 50 N.Y.2d 673 (1980).

2.    Whether the court's refusal to issue a missing witness charge for the prosecution's failure to call the responding officer denied Mr. Chery a fair trial in this case where the facts were in sharp dispute. U.S. Const. Amend. XIV; N.Y. Const. art. I, § 6.

3.   Whether the jury's verdict convicting Mr. Chery of robbery in the second degree must be set aside as legally insufficient where the prosecution failed to prove that the complainant suffered physical injury when he sustained bruising and a cut on his hand and leg, refused medical treatment, and did not miss any days of work.   U.S. Const. Amend. XIV; N.Y. Const., art. I, § 6.

<u>SUMMARY OF ARGUMENT</u>

Appellant Lyxon Chery challenges the court's decision to grant the prosecution's request to impeach Mr. Chery, who testified on his own behalf at trial, with factual omissions made during the course of a spontaneous, pre-<u>Miranda</u>-warning statement.  While the trial court, the prosecution, and the Appellate Division relied upon <u>People v. Savage</u>, 50 N.Y.2d 673 (1980), to justify impeaching Mr. Chery with these omissions, <u>Savage</u> demonstrates the opposite is true: a defendant may only be impeached with omissions after he receives his <u>Miranda</u> warnings and has an opportunity to narrate the essential facts of the case.   Indeed, this Court's most recent decision in <u>People v. Williams</u>, 25 N.Y.3d 185 (2015), reaffirmed this principle and explained that "absent unusual circumstances, the People may not use a defendant's silence to impeach his or her trial testimony."

Since Mr. Chery's omissions were made to the responding officers at the time of his arrest and before he received his <u>Miranda</u> warnings, there was no time for deliberate calculation that

3

would indicate Mr. Chery's exculpatory testimony at trial was recently fabricated to warrant impeachment.  Thus, the Appellate Division erred when it determined that Mr. Chery's "failure" to provide every mitigating fact at that moment was "an unnatural omission" permitting impeachment, requiring reversal and a new trial.

Mr. Chery also argues that the court improperly denied counsel's request for a missing witness instruction where the prosecution failed to call one of the responding officers in this case where the facts were in sharp dispute.  The trial court's and the Appellate Division's determinations that the missing officer's testimony would have been cumulative is belied by the record. Here, the testimony of the prosecution's witnesses was riddled with material factual inconsistencies.  Since "the lines of dispute were drawn sharply in terms of credibility," "the testimony of the only additional person who was present might have made the difference" in this case.  People v. Rodriguez, 38 N.Y.2d 95, 101 (1975).  As a result of this error, Mr. Chery's conviction should be vacated and a new trial ordered.

Finally, Mr. Chery contends that there was legally insufficient evidence to prove that the complainant suffered physical injury to support the second-degree robbery conviction. The prosecution's evidence consisted of the complainant's conclusory testimony describing his pain.  Indeed, there was no

4

medical   evidence   and   the   other   witnesses   provided   only
contradictory testimony as to the injuries the complainant actually
suffered at the time of the incident – none of which could have met
the physical injury threshold.   In light of the lack of consistent,
objective evidence to demonstrate the actual injuries sustained and
the level of pain the complainant experienced, the evidence was
legally insufficient to prove physical injury.

### STATEMENT OF FACTS

<u>Court's Decision that Mr. Chery's Prior Statement is Admissible as
a Spontaneous Statement</u>

On December 4, 2012, a <u>Huntley/Dunaway</u> hearing was held where
the prosecution called one witness, Officer <u>Ramon Gutierrez</u> (A.17).
According to Gutierrez, on April 20, 2012, he and his partner,
Police Officer Tunis, responded to the area of ▮▮▮ Amsterdam Avenue
after hearing commotion while making an unrelated arrest about one
block away (A.19-20, 37).   Upon arriving, he observed Appellant
Lyxon Chery and the complainant, Hazan Alhanah, in the midst of "a
fight" and handcuffed both men because he "couldn't determine who
was the perpetrator and who was the victim."   (A.41).   After
speaking with two witnesses and Alhanah, all of whom stated that
Alhanah worked at the deli where the fight took place, Gutierrez
uncuffed Alhanah (A.49).   Alhanah then mentioned to Gutierrez that
Mr. Chery and another person robbed him of $215, which was later
recovered from Mr. Chery's pants pocket (A.49-50).   When Mr. Chery

observed Gutierrez uncuff Alhanah, Mr. Chery stated, "why isn't he going to jail, he kicked my bike, he should be going to jail, too." (A.49).

Defense counsel moved to suppress the pre-Miranda-warning statement (A.64-65). The court, however, determined that Mr. Chery's statement, "why isn't he going to jail, he kicked my bike, he should be going to jail, too" was admissible at trial and denied counsel's motion: "I find that statement, although not Mirandized, didn't need to be because it was spontaneous and not the product of investigation. Accordingly, the motion to suppress that statement is denied." (A.70).

Trial Evidence

Prosecution's Case

From April 19, 2012 until the early morning hours of April 20, Hazan Alhanah, a 27-year-old cashier, was working his shift at the local deli located at ███ Amsterdam Avenue and West 104th Street (A.155-58). During his shift, Alhanah's boss allegedly brought him a white envelope containing $215 as payment for his work (A.207). Alhanah counted the money in the envelope and put it in his pocket (A.208).

At around 11:00 PM, Appellant Lyxon Chery walked in and purchased a beer while Alhanah was counting money from the cash register (A.162). According to Alhanah, as Mr. Chery was making

his purchase he stated, "you got money like that?" to which Alhanah replied that it was only singles (A.161). After Mr. Chery left the store, he allegedly remained in front drinking beer with another man, who Alhanah described as six feet tall, dark skin, and curly hair (A.162, 165). A few minutes later, the other man allegedly walked into the store and looked at the ceiling towards the store's security cameras while he was purchasing items (A.166). Although the store now has functioning security cameras, at the time, the store only had fake cameras to "scare the customers" (A.166, 218-19). After leaving the store, the two men then sat talking on a short metal gate surrounding the tree located in front of the deli for the next 10 to 15 minutes (A.168).

At around midnight, Alhanah prepared to close the store for the night and walked outside to bring in the gumball machine (A.168). As Alhanah moved the machine, the unknown man, who was speaking with Mr. Chery, purportedly approached Alhanah and hit him with a piece of wood four times on his back while saying "give the money" (A.170, 174-75). Mr. Chery then allegedly ordered him to stop hitting Alhanah and told Alhanah, "just give the fucking money, get the fuck out." (A.175). The unknown man then reached into Alhanah's pocket and took his wallet (A.177). According to Alhanah, Mr. Chery then choked him for 15 to 20 seconds and said, "where's the money, where's my money?" with a metal object in his hand (A.178-79, 183). At some point during the fight, Alhanah

testified, Mr. Chery reached into Alhanah's pants and took a white envelope containing money (A.211-12).    While Mr. Chery was allegedly choking Alhanah and the unknown man was searching his pockets, Ali Hezam Alashmlami approached the men after he observed the fight while in his red BMW stopped at a stop light (A.180, 239).  According to Alhanah, Alashmlami, whom he had previously met at a mutual friend's wedding, then began yelling that he had called the police to the two men, as did the tenant who lived above the deli on the second floor and observed the fight from his open window, Jeffrey Zapata (A.102, 180, 187).  Alhanah testified that in response to Alashmlami's and Zapata's warnings, the unknown man then dropped the piece of wood and ran away "fast."   (A.180).   Although Alhanah testified that only seconds passed between the unknown man running away and the police officers' arrival, Alashmlami testified that he was breaking up the fight for two to three minutes before the police arrived and never observed anyone other than the two men (A.193, 240-51).

At trial, neither Alashmlami nor Zapata claimed to observe an unknown man attacking Alhanah with Mr. Chery.  Rather, Alashmlami testified that he only observed "two guys [] fighting in front of the store. . . . The young kid [Alhanah] was on the ground and the old man [Mr. Chery] was above him, and they had a stick."  (A.240-41 (emphasis added)).  The only other person Alashmlami observed was a "skinny," "light skin tone" man in the vicinity of the fight

8

"walking" on Amsterdam Avenue towards 103rd Street (A.239 (emphasis added)). Zapata also testified that he "just saw [] two individuals" – Alhanah and Mr. Chery – though he could not identify Mr. Chery as one of the individuals (A.107, 112, 115). Nor did Alashmlami or Zapata testify that they observed Mr. Chery "choking" Alhanah with a metal object in his hand. Instead, Zapata testified that he saw Mr. Chery "going towards th[e] bike," which was next to the tree, "while yelling at the store" when Alhanah exited the deli while "holding something" that may have been a wooden stick (A.109, 115-16). Similarly, Alashmlami testified that Mr. Chery and Alhanah were "holding each other. There was no punching, no nothing, but just holding each other. They had a piece of wood and they didn't [] let it go from each other." (A.245).

Police Officer Ramon Gutierrez and Police Officer Tunis arrived at the scene after hearing a commotion while making an unrelated arrest a block away (A.120). In contrast to Zapata, Alashmalami and Alhanah's testimony, Gutierrez testified that when he arrived in a police vehicle, he observed Alhanah in a "fighting stance" and that the wooden board was on the ground about "one to [two] feet" from Alhanah while Mr. Chery had a sharp metal object in his fist (A.120, 142). Gutierrez ordered Mr. Chery to put the object on the ground, and he complied (A.120, 145). Because Gutierrez was "unable to determine who was the aggressor or who was the victim" when he arrived at the scene, he "decided to [hand]cuff

them both." (A.139). After speaking with Alashmlami, Zapata, and Alhanah, Gutierrez arrested Mr. Chery, who responded, "why isn't [Alhanah] going to jail, he kicked my bike, he should be going to jail too." (A.124).

During Gutierrez's investigation, Alhanah stated that he was robbed of his wallet and money (A.250, 289-90). At trial, Alhanah claimed that he told Gutierrez that $215 was stolen from him, but acknowledged that at Grand Jury he stated that it was $220 (A.202, 205). Alhanah, however, denied that he ever informed the defense investigator that Mr. Chery stole $235 (A.206). In contrast, Alashmlami testified that he only observed "a fight" and that there was "no robbery or money taken out, or a wallet, or nothing." (A.250). Zapata similarly stated that he only observed a "fight" or a "scuffle" between the two men and knew "nothing of a robbery." (A.113, 115). Gutierrez allegedly recovered $215 (two $100 bills, one $10 bill, and one $5 bill) inside a white envelope from Mr. Chery's pants pocket and two dollar bills from Mr. Chery's wallet (A.132, 134, 139). Although Gutierrez vouchered the wooden board, the metal object, and the money, he did not voucher the white envelope (A.130, 133, 142).

Gutierrez also searched and itemized the contents of Mr. Chery's backpack, which contained bike tools, a chain, a bike helmet, two bike pedals and additional bike repair and personal items (A.137-38). After transporting Mr. Chery to the precinct, he

10

was kept in a holding cell where he yelled, "I know where he works and I'm going to kill him and then you are going to hear from my lawyer." (A.140).

Alhanah claimed to suffer injuries as a result of the encounter, but refused medical treatment and did not claim to miss any days of work (A.226-27). According to Alhanah, he suffered "bruising," and a cut on his hand and leg and purportedly took photos of his injuries on an "old phone," but did not show the photos to anyone (A.185-86, 227). Alhanah also testified that he was "throwing up" while sitting handcuffed on the curb; however, no other witness observed Alhanah vomiting that night (A.220). Alashmlami observed Alhanah with "a little scratch on his neck and on his arm," but "nothing at all" on his face (A.245-46). In contrast, Gutierrez testified that Alhanah had "bruises, swelling redness in his hand" and "some facial lacerations," which he described as "minor cuts on his face" (A.122). No other witness observed Alhanah with any facial lacerations, including Alhanah himself. Although Alhanah was "scare[d]" during the ten days that followed the encounter, he specified that he did not experience physical pain "for all ten days." (A.195).

Defense Case

Appellant Lyxon Chery and Nadine Archer-Goundgi testified on behalf of the defense. Mr. Chery, a 52-year-old bike mechanic, had

been living in New York for 28 years when he was arrested (A.269, 271).  Prior to working as a bike mechanic, Mr. Chery worked for Archer at her restaurant on the Upper West Side from 1996 to 2005 (A.258, 260, 270).  In 2005, when Archer sold the restaurant, Mr. Chery continued working for Archer as a "handy man."  (A.260).  In March 2012, Mr. Chery was hired to paint the basement of Archer's home in Queens (A.258).  The project took about three days to complete and Mr. Chery was paid $450 in cash for his work (A.259).  Archer gave Mr. Chery three $100 bills and three $50 bills (A.259).

Between March 2012 and April 20, 2012, Mr. Chery kept in contact with Archer and would "stop by at any moment" to visit Archer at her home to "say hello."  (A.262).  During one of these visits a few weeks after completing the painting project, Mr. Chery and Archer discussed Mr. Chery saving money to replace documents that he had lost (A.260).  Mr. Chery showed Archer that he had saved two $100 bills in his wallet and stated, "you see, I'm still holding some of the money that you gave me."  (A.260-61).

During the afternoon of April 19, 2012, Mr. Chery rode his bike from his home in Brooklyn to Amsterdam Avenue and West 104th Street in Manhattan — a ride he frequently made to visit his friends who lived in the area (A.271-72).  He arrived at around 5:00 PM and chained his bike to a tree fence in front of the bike shop, which was adjacent to a deli (A.272-73).  From 5:00 PM until around 11:00 PM, Mr. Chery spent his time with his friend Bogus,

12

who Mr. Chery described as "light skin" with "dark hair" and "6 feet" tall (A.306).  Bogus, Mr. Chery, and another friend spent the evening "hanging out . . . by the park," "joking, [and] listening to music  in [Bogus'] car"  (A.274, 307).  At around 11:00 PM, Bogus said he had to go home, but asked Mr. Chery if he would purchase him a beer at the store (A.274).  Mr. Chery purchased three beers and a bottle of water for himself with a $20 bill and received $15 in change (A.274, 308-09).  Mr. Chery did not drink any beer that night as he is a recovering alcoholic and has been sober since August 30, 2010 (A.275, 303-04).  After Bogus and his friend drank the beer Mr. Chery purchased, the two men left in Bogus' car to find parking because they had to go to work in the morning (A.275, 310).  Mr. Chery did not see his friends again that night (A.275).

Before leaving for his bike ride to Brooklyn, Mr. Chery sat on the small metal gate next to his chained bike located about 15 feet in front of the deli where he purchased the beer (A.275, 314).  Mr. Chery sat organizing and packing his backpack with his bike tools, hearing aid, denture glue, I-pod and other items (A.275-76).  While preparing for his departure, Mr. Chery observed two teenage girls quickly exiting the store as though "they were scared" (A.276). Alhanah followed them out the store and was "cursing them [] out" and yelling, "bitches, I hope you don't fucking come around here no more because I will hurt you, you think I'm playing."  (A.277).

13

Alhanah then told Mr. Chery that the girls were trying to steal from him to which Mr. Chery responded that he should stop "chas[ing] people out [of] the store like that" otherwise he will lose customers if they see him "treat[ing] people" that way (A.278, 314).

In response to Mr. Chery's statement, Alhanah kicked Mr. Chery's bike and Mr. Chery yelled, "what's the matter with you?" (A.315-16). Alhanah kicked the bike a second time then ran inside the deli (Id.). In the midst of this argument, Mr. Chery forgot to pack his metal bike axle wheel, which remained on the ground (A.281). Mr. Chery then put on his helmet and backpack and walked his bike about two feet from the fence when he felt a "banging [on his] head." (A.316). Using a wooden board, Alhanah hit Mr. Chery four times: on the helmet, backpack, left shoulder, and hand, forcing Mr. Chery to lose his grip on his bike (A.279-80, 318). Mr. Chery then grabbed the board and they were both holding onto it when Alashmlami arrived (A.280). Once the police responded, Alhanah and Mr. Chery dropped the wooden board onto the ground and the officers separated and handcuffed the two men (A.281-82, 320). One of the officers spoke with Mr. Chery and the other officer spoke with Alhanah (A.281-82). Mr. Chery explained to the officer, "he was kicking my bike, and then we got into a fight" and that the wooden board belonged to Alhanah (A.282). Mr. Chery was then brought to the 24th Precinct where he was searched and the officers

14

discovered $215 in his wallet and no white envelope (A.283). Mr.
Chery did not know that he was arrested for a robbery, rather than
just a fight, until two days later when he was arraigned (A.284-
85).

After posting bail, Mr. Chery went to Brookdale Hospital in
Brooklyn because he lost feeling in his arm after the fight
(A.286). Mr. Chery was hit in the part of his arm where he had two
prior surgeries, causing swelling in the surrounding muscles, and
was instructed to take Ibuprofen to ease the pain (A.286).

### Impeachment by Omission of Mr. Chery

Before beginning cross-examination of Mr. Chery, the
prosecutor made a motion to impeach him by use of prior omissions:

> MR. FREUD [prosecutor]: . . . The motion is to
> impeach the defendant by omissions of his
> statement. The testimony of both the police
> officer and the defendant is that . . . when
> the police arrived on the scene, he said "that
> guy kicked my bike, why isn't he being
> arrested?"
>     When a defendant does not say anything to
> law enforcement, they have executed their
> fifth amendment right, and they have not
> incriminated themselves or made any
> statements, and so they can't be impeached by
> what they did not say.
>     Here, he said some statements and,
> logically, he would have told the police
> officers that he saw the -- that he spoke with
> the store owner who was being aggressive with
> the girl, that he told him to stop, but that
> man had attacked him, and that he was
> defending himself. And none of those
> statements, which logically would have been
> said to the police when they arrived on the

scene and saw the two of them, came out of the
defendant.   So therefore, I seek to cross
examine him on those admissions.

(A.288).   To support its application, the prosecution relied upon

People v. Savage, 50 N.Y.2d 673 (1980):

> MR. FREUD: I have the case of People v. Savage
> here, which is the case of the Court of
> Appeals that says, specifically, where a
> defendant makes some statements, it is totally
> different from where the defendant makes no
> statements.   So where it makes some statements
> and it would logically have included the other
> statements that makes sense.

> *     *     *     *

> MR. FREUD: . . . . If the defendant had made
> no statements, then certainly, you could never
> impeach him on his omission to make any
> statements.   But where he made some, and
> logically, he would have made these other
> statements based on the facts and story here,
> where someone is arrested and he is now
> claiming this man attacked him, and it was
> over these girls that came out of the store,
> and he was being aggressive with him and he
> said nothing at all about that to the police
> while being arrested, logically, he would have
> made those statements.

> *     *     *     *

> MR. APFELBAUM [defense counsel]: I'm looking
> at this case, and what jumps out is that it
> involves a case in which Miranda warnings were
> given.

> THE COURT: Yeah, but I don't really think that
> is the issue here, but maybe it was.

> MR. FREUD: In Savage, it was post-Miranda, but
> the same rule applies to a pre-Miranda
> statement, assuming the statement is
> admissible.   It would be the same logic.

16

(A.292-93).

After taking a brief recess, the court ultimately agreed with the prosecution and granted the application to impeach Mr. Chery by omission:

> [T]his falls under the rule of People v. Savage and its prodigy (sic) where the defendant was attempting to give an explanation about the conduct to the police. Once he testifies, he gives a further explanation that he naturally would have been expected to give, given the fact he was trying to explain what happened.

(A.294).

During cross-examination, the prosecution impeached Mr. Chery on his failure to inform the responding officers of specific details as to the events that night:

> Q   You didn't tell Officer Gutierrez that you had seen these two girls getting thrown out of the store, did you?
>
> A   No.  I didn't bring up two girls.
>
> Q   And you didn't tell Officer Gutierrez that the store owner said mother fucker, get away from my store, right?
>
> A   I tell him that.
>
> Q   You told the officer that too?
>
> A   I told him, that's about my bike, he got the wood because they come, they come out of the car, we was fighting.  We was together winding side to side to each other, like wrestling.

*     *     *     *

Q  You didn't tell him that he hit you with a wooden board, did you?

A  I don't tell him he hit me with a wooden board.  We was fighting with the wood board.

          *       *       *       *

Q  You never told the police that you had seen Mr. Alhanah chasing the girls out of the store did you?

A  No, I don't say that.

(A.321-23).

During summations, the prosecutor referred to this testimony and highlighted Mr. Chery's omissions to attack his credibility:

> And finally, the police come and he said, no, I didn't want to be arrested, but he doesn't tell them the whole story he tells you, that man was kicking my bike, why isn't he being arrested.   He never said to the police, according to his own words and Officer Gutierrez, that man attacked me with the wooden board, that man was yelling at girls and got upset with me for interjecting, that I have an innocent excuse for where my money came from.  According to his story, he never told any of that.  He just said, he is kicking my bike, why isn't he being arrested.

(A.363).


Motion to Dismiss

At the end of the prosecution's case, defense counsel moved to dismiss "every count of the indictment for failure of the People to prove a prima facie case with respect to each and every element, thereof."  (A.252).  As to "physical injury," defense counsel

18

argued that the prosecution had failed to prove "that there's been impairment, physical impairment or substantial pain" and noted that "[t]he case law has established that mere bruises, small lacerations do not constitute physical injury in the law." (A.252-53).

The court denied the motion in its entirety and found that the prosecution met its burden with respect to each count. The court found that the testimony as to the "pain that [Alhanah] suffered, in addition to the bruises and how long the bruises lasted for, as well as the nausea and, you know retching, or the beginning of vomiting" met the threshold for physical injury (A.254).

At the end of the defense's case, counsel renewed his motion to dismiss and the court denied the motion "for the reasons [] stated previously." (A.331-32).

Missing Witness Charge Request

Prior to the commencement of trial, defense counsel stated that he was "told that Police Officer Tunis is not going to be called" as a trial witness for the prosecution (A.75). Relying on the suppression hearing testimony, counsel explained that Tunis "arrived at the scene with the arresting officer and actually saw the events taking place that form the subject matter of the indictment." (Id.). Defense counsel informed the court that, "[i]f he is not going to be called as a witness, I am going to be

asking for a missing witness charge." (Id.). The court reserved decision until the charge conference (A.76).

At the end of the defense's case, defense counsel renewed his request for a missing witness instruction (A.327). The court indicated that it was "not inclined to give a missing witness charge with respect to Officer Tunis" since there was no "reason to believe his testimony would not be non-cumulative (sic)." (Id.). Defense counsel explained that in light of the contradictory evidence in this case, Tunis' testimony could not be considered cumulative:

> MR. APFELBAUM [defense counsel]: No matter what he says, he is going to be contradicting somebody because there are different versions of what the scene was when the police arrived.
> On top of that we have the testimony of the defendant this afternoon that each police officer went up to each participant in the fight and interviewed them separately. So, I don't know, apparently Officer Tunis is the one who interviewed the complaining witness and we have no idea what was said.
>
> THE COURT: Well, except we have the testimony of the complaining witness and we have the testimony of the other officer. And I don't know that there is any dispute about what the complainant said, not what the complainant did.
> In other words, . . . there is a dispute about what happened between the complainant and the defendant, but I don't know that there is any issue of fact that's come up with respect to what the complainant said happened.
>
> MR. APFELBAUM: Isn't it Officer Tunis, who testified, when he came on the scene that defendant was holding the bicycle part in a threatening manner towards the complaining

witness and the complaining witness wasn't
holding anything?

*    *    *    *

THE COURT:   -- Officer Gutierrez testified,
and this is the second officer, I just don't
know under the standard for a missing witness
charge why he would be expected to give non-
cumulative testimony.   In other words, why he
would be expected to give testimony that's
different than [O]fficer Gutierrez who arrived
at the scene at [the] same time.
     Obviously, I think you could make the
argument, if you want and point out that he
wasn't here.   I don't know that it rises to
the level of a missing witness instruction
when you have two police officers arriving at
the scene, and there is no reason to believe
that the second officer would give testimony
that's different than the first officer would
give. . . .

(A.327-28).   In addition to finding that Tunis' testimony would be

cumulative, the court agreed with the prosecution that the defense

made "no showing" that Tunis' testimony would be helpful to the

prosecution's case (A.329-30).


<u>Jury Charge, Verdict and Sentence</u>

     The court charged the jury with robbery in the first degree

for using or threatening the use of a dangerous instrument while

being aided by another to forcibly steal property from Alhanah

(P.L. § 160.15(3); robbery in the second degree for causing

physical injury to Alhanah during the course of the forcible taking

(P.L. § 160.10(2)(a)); and robbery in the second degree for

21

forcibly stealing property while being aided by another (P.L. § 160.10(1)) (A.386-96).

The jury submitted three notes requesting a rereading of the testimony of Gutierrez and Alhanah, photos of the store, a list of items in Mr. Chery's backpack, and a clarification of the law as to robbery in the second degree (aided by another) and reasonable doubt (A.331-50). On December 18, 2012, the jury convicted Mr. Chery of first-degree robbery and two counts of second-degree robbery (A.424-26).

At the February 19, 2013 sentencing proceeding, the court noted that this crime was "an aberration of Mr. Chery," as he has lived a "law abiding life" (A.433). Mr. Chery was sentenced concurrently to the minimum term of five years' imprisonment to be followed by two-and-a-half years' post-release supervision for the first-degree robbery conviction and three-and-a-half years' imprisonment to be followed by two-and-a-half years' post-release supervision for the second-degree robbery convictions (A.433).

Appellate Division Decision

On appeal to the Appellate Division, First Department, Mr. Chery argued that the court improperly allowed the prosecution to impeach him with omissions made during the course of his pre-Miranda warning, spontaneous statement. The First Department affirmed the conviction and, citing People v. Savage, 50 N.Y.2d 673

(1980), determined that the impeachment was proper as Mr. Chery's "failure to make the serious accusations against the victim that defendant made at trial, while only informing the officer of relatively trivial alleged misconduct, was an unusual omission." People v. Chery, 127 A.D.3d 533, 533 (1st Dep't 2015), reprinted at A.4.

Mr. Chery also argued that the court should have granted counsel's request for a missing witness instruction where the prosecution did not call one of the responding officers as a witness in this case where the testimony was inconsistent and contradictory. The Appellate Division determined that because the "case did not turn on police credibility, and there is no indication that the uncalled officer could have provided material, noncumulative testimony," the court appropriately denied counsel's request. Chery, 127 A.D.3d at 533-34, reprinted at A.4-5.

Finally, Mr. Chery contended on appeal that the evidence was legally insufficient to establish that Alhanah suffered physical injury to support the conviction for second-degree robbery (count two). The First Department disagreed and, citing People v. Chiddick, 8 N.Y.3d 445 (2007) and People v. Guidice, 83 N.Y.2d 630 (1994), held that physical injury was established where the evidence supported "the inference that the victim sustained substantial pain as the result of being beaten with a dangerous instrument." Chery, 127 A.D.3d at 533, reprinted at A.3-4.

**ARGUMENT**

**POINT I**

THE TRIAL COURT ERRED IN PERMITTING THE
PROSECUTOR TO IMPEACH MR. CHERY WITH OMISSIONS
MADE DURING THE COURSE OF HIS PRE-<u>MIRANDA</u>,
SPONTANEOUS STATEMENT TO THE RESPONDING
OFFICER. U.S. CONST., AMENDS. V, XIV; N.Y.
CONST., ART. I § 6; <u>PEOPLE V. BORNHOLDT</u>, 33
N.Y.2D 75 (1973); <u>PEOPLE V. SAVAGE</u>, 50 N.Y.2D
673 (1980).

In this case, where the jury was presented with a credibility
contest, the trial court erred when it permitted the prosecutor to
use omissions in Mr. Chery's spontaneous statement to impeach his
trial testimony. Without <u>Miranda</u> warnings and specific questions
directing Mr. Chery's attention to the omitted facts, Mr. Chery's
factual omissions made during his already exculpatory statement was
not indicative of a recent fabrication of mitigating facts that
surfaced only at trial. Indeed, in the <u>Huntley</u> hearing decision,
the court determined the complete opposite in denying suppression
– that the pre-<u>Miranda</u> statements to the officers were
"spontaneous" in nature and, thus, could not be the product of
deliberation or calculation in response to interrogation (H: 65).

In light of the lack of <u>Miranda</u> warnings and the spontaneity
of his statement, Mr. Chery could not have been expected to
volunteer additional information to the officers as it was not a
"most unnatural" omission under the circumstances. <u>People v.
Savage</u>, 50 N.Y.2d 673, 679 (1980). Accordingly, the judgment
should be reversed and a new trial ordered.

24

It is well-settled that the prosecution cannot use a defendant's pretrial silence for impeachment purposes, as silence "may be attributable to a variety of innocent circumstances that are completely unrelated to the truth or falsity of his testimony." People v. Conyers, 52 N.Y.2d 454, 458 (1981); see People v. DeGeorge, 73 N.Y.2d 614 (1989). Recently, in People v. Williams, 25 N.Y.3d 185 (2015), this Court reaffirmed the evidentiary principles established in Conyers and DeGeorge and explained that "absent unusual circumstances, the People may not use a defendant's silence to impeach his or her trial testimony." Highlighting how "unusual" the circumstances must be to warrant impeach by omission, this Court noted that it had only twice before permitted this form of impeachment: in the scenarios presented in People v. Rothschild, 35 N.Y.2d 355 (1974)[2] and People v. Savage, 50 N.Y.2d 673 (1980).

In People v. Savage, 50 N.Y.2d 673 (1980), this Court concluded that a defendant's conspicuous omission of exculpatory facts during a voluntary statement to police after receiving

---

[2] While People v. Rothschild, 35 N.Y.2d 355 (1974), presents one of the rare factual scenarios that permit impeachment of a defendant by omission, the legal principle upheld in Rothschild is not applicable to this case. In Rothschild, this Court held that impeachment of a defendant police officer's failure to report to his superiors that the complainant was attempting to bribe him was proper where "such silence is patently inconsistent with the defense asserted, and there is a patent obligation to speak." Since it was never alleged, nor could it be argued, that Mr. Chery had an obligation to speak to the responding officers, Rothschild is inapplicable to this case and will not be discussed further in this brief.

25

Miranda warnings demonstrated that the exculpatory facts detailed for the first time at trial were a recent fabrication. As a result, this Court held that the prosecution could impeach the defendant with his mitigating factual omissions made during his "devastatingly incriminating" voluntary statement as it was relevant to the jury's assessment of the defendant's credibility: "that the defendant decided not to offer the mitigating explanation for his conduct in amelioration of his role in the shooting he undertook to describe could challenge credulity." Id. at 679. Citing Miranda v. Arizona, 384 U.S. 436, 460 (1966), the Savage court emphasized that a defendant's pretrial silence is particularly relevant to credibility when a defendant "casts aside his cloak of silence" and "'chooses to speak in the unfettered exercise of his own will'" despite these warnings. Savage, 50 N.Y.2d at 681.

In such cases, a defendant's omissions of exculpatory or mitigating information from an otherwise incriminating statement may be used against him for impeachment purposes. Savage, 50 N.Y.2d at 681. The rationale for this exception is that this exclusion would be "extraordinarily probative in enabling [the triers of fact] to evaluate the reliability of the explanation when it surfaced for the first time at trial." Id. at 678 (emphasis added). Therefore, "when circumstances make it most unnatural to

omit certain information from a statement, the fact of the omission is itself admissible for purposes of impeachment." Id. at 679-80.

As counsel noted below, unlike Savage, Mr. Chery's spontaneous statement was made before any Miranda warnings were read. This distinction is significant – a defendant who has waived his Miranda rights is speaking deliberately and in a controlled environment; thus, any omissions of mitigating facts in the midst of an incriminating statement bear heavily on credibility. See e.g. Samuel v. LaValley, 2013 WL 550688 *8 (E.D.N.Y. 2013) (holding that the prosecutor could not ask the defendant about his post-arrest silence while in the police officer's car because "no Miranda warnings had been administered"). In contrast, here, Mr. Chery, before hearing his Miranda rights and only after observing that the officers uncuffed Alhanah, quickly blurted, "that guy kicked my bike, why isn't he being arrested?" In light of the spontaneity of the statement, Mr. Chery could not be held accountable for any omissions as they could not be the product of deliberation or calculation. Cf. People v. Vasquez, 88 N.Y.2d 561, 574 (1996) (noting that a "key component of 'excited utterances' are their spontaneity" as it "render[s] the observer's normal reflective processes inoperative.").

Furthermore, in contrast to Savage, Mr. Chery's statement was not "devastatingly incriminating" in nature and his explanation did not "surface for the first time at trial." In cases like Savage,

where a defendant provides an incriminating statement to officers, the omission of mitigating information is significant because it would be natural for a person to provide all exculpatory information under those circumstances.  By contrast, Mr. Chery's statement was not incriminating and he maintained his innocence from the time of his arrest and throughout trial.  See, e.g., People v. Barber, 143 A.D.2d 450 (3d Dep't 1988) (distinguishing Savage on the grounds that the defendant there "made an incriminating statement to police and only raised an exculpatory defense at trial," whereas in Barber, the "defendant maintained his innocence from the very beginning.").

Moreover, Mr. Chery's failure to include every detail of exactly what occurred that night to the officers was not due to deliberate calculation, but because he was not given an opportunity to "narrate the essential facts of his involvement." Savage, 50 N.Y.2d at 676.  Instead, Mr. Chery made a single non-incriminating statement with little to no opportunity to "narrate" the details of that evening.  See id. at 685 (Gabrielli, J., dissenting) ("The majority conclude that the instant case is distinguishable from Doyle and Conyers because the defendants in those cases said little or nothing to the police at the time of arrest, whereas Savage did admit that he had shot [the complainant].").  Indeed, at the time of the statement, Mr. Chery was handcuffed while on the street and

28

only made the brief, exculpatory statement upon observing the officers uncuffing Alhanah.

It is also true that a defendant may not be impeached simply by showing that he omitted to state a fact or to state it more fully at a prior time. See People v. Bornholdt, 33 N.Y.2d 75, 88 (1973). In this regard it must be shown that "at the prior time the witness' attention was called to the matter and that he was specifically asked about the facts embraced in the question propounded at trial." Id.

Here, it was never alleged that Mr. Chery's "attention was called" to explain the specifics of what occurred that night to the responding officers. Bornholdt, 33 N.Y.2d at 88. In fact, the hearing court had already determined that the only statement Mr. Chery gave at that moment – "that guy kicked my bike, why isn't he being arrested?" – was "spontaneous and not the product of investigation." (A.138) (emphasis added). For a statement to be spontaneous, it must "in no way [be] the product of an interrogation environment, the result of express questioning or its functional equivalent." People v. Lanahan, 55 N.Y.2d 711, 713 (1981) (internal citations and quotations omitted). Thus, by its very nature, a witness' omissions made during a "spontaneous" statement cannot be used for impeachment since the witness could not have been "specifically asked about the facts." Bornholdt, 33 N.Y.2d at 88. Therefore, that Mr. Chery did not provide a complete

29

narrative of the events that night was not probative of his credibility.

*       *       *       *       *

For the reasons stated above, the court's ruling allowing the prosecutor to elicit Mr. Chery's prior inconsistent statements by omission was harmful error. <u>People v. Crimmins</u>, 36 N.Y.2d 230 (1975). The error was exacerbated by the prosecutor's summation comments inviting the jury to regard these omissions as impeachment material undermining Mr. Chery's credibility:

> [H]e doesn't tell [the police] the whole story he tells you, that man was kicking my bike, why isn't he being arrested. He never said to the police, according to his own words and Officer Gutierrez, that man attacked me with the wooden board, that man was yelling at girls and for upset with me for interjecting, that I have an innocent excuse for where my money came from. According to his story, he never told any of that. He just said, he is kicking my bike, why isn't he being arrested.

(A.363). As this Court noted in <u>Williams</u>, "evidence of defendant's selective silence is highly prejudicial, and there is a significant risk that the jurors deemed" Mr. Chery's failure to provide every mitigating fact to the responding officers as evidence of recent fabrication. <u>Williams</u>, 25 N.Y.3d at 194-95. Thus, there is little doubt that a significant probability existed that the jury would have acquitted Mr. Chery had the court not allowed this damaging impeachment evidence.

30

Moreover, the proof of Mr. Chery's guilt was not overwhelming. The testimony from the prosecution's witnesses was riddled with inconsistencies. For example, there was contradictory evidence as to whether or not a robbery even occurred that night. Consistent with Mr. Chery's claim that he did not rob Alhanah, both Zapata and Alashmlami repeatedly claimed that they only observed a "fight," not a robbery: "It was a scuffle. . . . I don't know nothing of a robbery" (A.113, 115); "The only thing I seen (sic) was a fight. I didn't see like no robbery or money taken out, or a wallet, or nothing." (A.250). Not even Alhanah could consistently claim how much money was purportedly stolen from him (A.205-06, 208). Additionally, neither witness observed Gutierrez recover a white envelope of money from Mr. Chery that night. Although Gutierrez agreed that he "vouchered every little item [] recovered from Mr. Chery," he conveniently forgot to voucher the white envelope that allegedly served as the target of the search (A.134, 136, 142).

Similarly, there was conflicting testimony about whether or not there was another person aiding Mr. Chery during the course of the alleged robbery. Even though two witnesses observed the incident, only Alhanah testified that an unknown man assisted Mr. Chery in the robbery, and that the unknown man only ran away <u>after</u> Zapata and Alashmlami yelled that they were calling the police (A.180). This testimony, however, directly contradicted both Zapata's and Alashmlami's testimony that they <u>only</u> observed Mr.

Chery and Alhanah fighting. Nor did Gutierrez claim to observe an accomplice since Alhanah claimed that the police "missed" the unknown man by "seconds." (A.193). Although only "seconds" elapsed between the time the police arrived and the accomplice fled, Alashmlami testified that he was breaking up the fight for two to three minutes before the police arrived and never observed another man aiding Mr. Chery (A.240, 246).

Nor was the testimony consistent as to whether or not Mr. Chery used a dangerous instrument during the incident. Alhanah's contention that Mr. Chery was wielding a bike axle was contradicted by both Zapata and Alashmlami. Alashmlami testified that "the young kid [Alhanah] was on the ground and the old man [Mr. Chery] was above him, and they had a stick. . . . They were holding each other, like fighting with a stick." (A.241, 243, 246). Similarly, Zapata corroborated Mr. Chery's testimony that he was preparing to leave on his bike when Alhanah attacked him with the stick. Compare (A.109) with (A.278-79). Notably, Gutierrez handcuffed both Alhanah and Mr. Chery because he was "unable to determine who was the aggressor or who was the victim." (A.121, 141). Finally, as discussed further below, see Point III infra, there was also weak evidence that Alhanah suffered any physical injury during the purported robbery since he refused medical treatment, only sustained bruising and a cut on his hand and leg, and did not miss any days of work.

32

In light of the crucial role Mr. Chery's credibility played in this case and the fact that the evidence of his guilt is far from overwhelming, the trial court's error cannot be deemed harmless. See Williams, 25 N.Y.3d at 194-95; People v. Barber, 143 A.D.2d 450 (3d Dep't 1988).

The issue is fully preserved for this Court's review. Defense counsel opposed the prosecution's motion to impeach Mr. Chery through omission. Counsel specifically argued that Savage was distinguishable and not applicable to the facts of this case since Mr. Chery did not receive his Miranda rights at the time of the statement (A.291-93). Ultimately, the trial court granted the prosecution's motion, similarly ruling that Savage governed and that "given the fact [Mr. Chery] was trying to explain what happened," it would have only be "natural" for him to provide "further explanation." (A.294). Notably, the Appellate Division addressed the merits of this claim on appeal.

For the reasons stated above, the judgment must be reversed and a new trial ordered.

33

POINT II

THE COURT'S REFUSAL TO ISSUE A MISSING WITNESS
CHARGE FOR THE PROSECUTION'S FAILURE TO CALL
THE RESPONDING OFFICER DENIED MR. CHERY A FAIR
TRIAL IN THIS CASE WHERE THE FACTS WERE IN
SHARP DISPUTE.   U.S. CONST. AMEND. XIV; N.Y.
CONST. ART. I, § 6.

In light of the weak and conflicting evidence in this case, it
was of the utmost importance to have every witness testify as to
what occurred that night.   Thus, when the prosecution did not call
one of the responding officers, Officer Tunis, as a trial witness,
defense counsel appropriately requested a missing witness charge.
The court, however, denied defense counsel's request, opining that
Officer Tunis' testimony would only be cumulative to Officer
Gutierrez's testimony and that the testimony would not necessarily
be favorable to the prosecution.

Under certain circumstances, the failure of a party to produce
a material witness requires a trial court to instruct the jury that
an unfavorable inference may be drawn from this failure.   People v.
Gonzalez, 68 N.Y.2d 424, 427 (1986).   Where a witness is available
and has information that would "elucidate the transactions" at
issue, and the prosecution fails to call that witness, the trial
court should instruct the jurors that they are entitled to draw an
adverse inference from that failure.   Id.   The failure to call the
witness "creates the presumption that the testimony, if produced,
would be unfavorable." Gonzalez, 68 N.Y.2d at 427 (citing Graves
v. United States, 150 U.S. 118 (1893)).   The missing witness charge

34

"derives from the commonsense notion that 'the nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its <u>tenor is unfavorable to the party's cause</u>.'"   <u>Gonzalez</u>, 68 N.Y.2d at 427 (citations omitted)(emphasis in original).

To be entitled to such a charge, the party seeking it must demonstrate: 1) that there is an uncalled witness believed to be knowledgeable about a material issue pending in the case; 2) that such witness can be naturally expected to testify favorably to the opposing party; and 3) that such party has failed to call him to testify.  <u>Id.</u> at 427.  Once these facts have been demonstrated, it is incumbent upon the party opposing the charge to demonstrate why the charge would be inappropriate. <u>Id.</u> at 428.

This burden can be met by demonstrating that the missing witness is not "available" or under the party's "control" such that he would be expected to testify favorably.  <u>Id.</u> at 428. Availability refers merely to a party's ability to produce the witness.  <u>Id.</u>  For example, if the witness's location remains unknown despite diligent efforts to locate him, the charge would be inappropriate.  <u>Id.</u>

"Control" is a "relative concept" apart from physical availability and concerns "the relationship between the witness and the parties." <u>Id.</u> at 429.  "Thus, the fact that a witness is 'equally available' to both sides, standing alone, is insufficient

to defeat a timely request for the charge." Id. A party can demonstrate that a witness is not within his control by demonstrating that the witness would not be "expected" to testify in his behalf. People v. Keen, 94 N.Y.2d 533, 539 (2000) (emphasis in original). It is this expectation that the missing witness would corroborate the party's account that demonstrates the witness is within the party's control. Id.

Accordingly, a missing witness charge is required if it is demonstrated that the party had the ability to produce the witness, and "there was such a relationship, in legal status or on the facts, as to make it natural to expect the party to have called the witness to testify in his favor." Gonzalez, 68 N.Y.2d at 429 (emphasis added). As a procedural matter, "the issue must be raised as soon as practicable." Id. at 428.

Here, counsel acted timely, pressing for the instruction immediately on learning that the prosecution would not call Tunis (A.75-76, 329-30). And, as counsel argued, the nature of Tunis' testimony and his relationship with the prosecution satisfied the substantive criteria.

At trial, the prosecution did not contest that Tunis was available for production and that he possessed knowledge of material issues in the case. Rather, the prosecution argued, and the court ultimately agreed, that Tunis' testimony would be

cumulative and that Mr. Chery did not "show" that Tunis' testimony would be favorable to the prosecution (A.329-30).

Tunis' testimony, however, would not have been cumulative in this case where the issues "were in sharp dispute" and Guiterrez and Alhanah's testimony were "diametrically opposite" to the testimony of Zapata and Alashmlami. <u>People v. Rodriguez</u>, 38 N.Y.2d 95, 101 (1975). Here, "the testimony of the only additional person who was present might have made the difference" since "the lines of dispute were drawn sharply in terms of credibility" as to Alhanah's sustained injuries, the recovery of a white envelope from Mr. Chery, and whether Mr. Chery was holding a weapon at the time of the officers' arrival. <u>Id.</u> Tunis would have provided an additional, and necessary, perspective to assist the jury in evaluating the credibility of the other witnesses, particularly Alhanah and Gutierrez. Indeed, at trial it was revealed that while Gutierrez spoke with Mr. Chery, Tunis spoke with Alhanah outside of Gutierrez's presence. During the conversation, Tunis had a better opportunity to observe Alhanah's injuries – especially whether there were any injuries to his face as Gutierrez claimed at trial. Similarly significant was whether a white envelope was recovered from Mr. Chery – while Alhanah and Gutierrez claimed a white envelope containing money was found on Mr. Chery, Zapata and Alashmlami did not observe its purported discovery, or any robbery at all. The presence of a white envelope was especially important

in this case since both Mr. Chery and Archer testified that the
$215 recovered on Mr. Chery was money that Archer had recently
given him and that he had been saving.   As a result, Tunis'
testimony confirming the presence or absence of the white envelope
and Alhanah's injuries could not have been cumulative with such
contradictory evidence.

Furthermore, contrary to the prosecution's argument and the
court's opinion below, Mr. Chery was not required make a "showing"
that Tunis' testimony would be beneficial to the prosecution.   This
Court recently addressed this very issue in People v. Thomas, 21
N.Y.3d 226 (2013).   In Thomas, this Court held that a defendant
"had no obligation to make an offer of proof as a predicate for a
missing witness argument" since "the witness is in the control of
the party that failed to call him." Id. at 231 (internal citations
omitted).   "A party making such an argument, like one requesting
such an instruction, 'can hardly know what [the] witness knows or
what the witness would say if called.'" Id. (citing People v.
Kitching, 78 N.Y.2d 532, 537 (1991)).

Just as in Thomas, Mr. Chery was not required to make a
showing of proof as to the substance of Tunis' testimony.   Indeed,
Tunis' role as the responding officer demonstrated that "he was in
a position to have knowledge of these issues or to have observed
the events" and, thus, it was "natural to expect the [prosecution]
to have called the witness to testify in his favor." Kitching, 78

Legally sufficient evidence is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof." C.P.L. § 70.10(1); see also Jackson v. Virginia, 443 U.S. 307 (1979); People v. Contes, 60 N.Y.2d 620, 621 (1983). The standard for legal sufficiency of evidence is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found essential elements of the crime beyond a reasonable doubt." People v. Schulz, 4 N.Y.3d 521, 529 (2005) (quoting Jackson, 443 U.S. at 319).

Robbery in the second degree requires proof of "physical injury," which is defined by a showing of either "substantial pain" or "impairment of physical condition." Penal Law § 10.00(9). As a matter of law, there is an objective minimum below which an injury will not meet the statutory definition. See, e.g., People v. Pope, 174 A.D.2d 319, 320–21 (1st Dep't 1991); People v. DiStefano, 252 A.D.2d 530, 530 (2d Dep't 1998) (reducing conviction to third-degree robbery, which does not require proof of physical injury, where complainant received ice pack but no other treatment from paramedics).

The test for "substantial pain" is a mixed objective and subjective one. See People v. Chiddick, 8 N.Y.3d 445, 447–48 (2007). Though relevant, subjective evidence of the complainant's injury — i.e., the complainant's testimony about the nature of the

41

pain — is not enough by itself to establish legally sufficient evidence, let alone proof beyond a reasonable doubt. Subjective descriptions must be corroborated by objective evidence. See Matter of Philip A., 49 N.Y.2d 198, 200 (1980) ("[I]t is clear from the inclusion of the word 'substantial' in the Penal Law definition that the Legislature did not intend a wholly subjective criterion to govern."); see also People v. Brown, 145 A.D.2d 301, 301 (1st Dep't 1988).

Corroboration can come from various sources, such as eyewitnesses, see People v. Williams, 170 A.D.2d 361 (1st Dep't 1991); medical professionals' testimony about the extent of injury and the necessary treatment; or evidence of the length of any hospital stay, work days lost in recovery, and the need for follow-up treatment. See, e.g., Pope, 174 A.D.2d at 321; People v. Williams, 112 A.D.2d 176, 176-77 (2d Dep't 1985). Medical records may constitute objective evidence establishing physical injury, see People v. Baksh, 43 A.D.3d 1072, 1074 (2d Dep't 2007), but even then such evidence must corroborate the extent of the injury. See People v. McDuffie, 293 A.D.2d 287, 287 (2d Dep't 2002). Moreover, a person seeking medical treatment is only one factor in establishing physical injury under the statute. See Baksh, 43 A.D.3d at 1074 (citing Chiddick, 8 N.Y.3d. 445). Taken alone, the "bare fact" that a complainant received medical treatment "sheds no

light on the nature of the asserted injury." <u>Matter of Robin B.</u>, 78 A.D.2d 679, 679 (2d Dep't 1980).

Here, not one of the above examples of objective evidence — nor any objective evidence — was presented in corroboration of Alhanah's generalized subjective complaints of pain. Alhanah did not seek medical treatment, and therefore there was no medical testimony, no records, and no "follow-up treatment." There was also no evidence that Alhanah lost any time at work or that his life was impacted in any way. In fact, the only photographs Alhanah purportedly had of his injuries were in his "old phone" and were never produced or shown to anyone (Alhanah: 154). Although there was conflicting testimony that Alhanah had a cut on his hand and sustained bruises, such testimony was merely conclusory and without some other corroboration as to the type and degree of pain suffered, it fell below that needed to supply sufficient evidence of injury. While the record supports a finding that Alhanah experienced <u>some</u> pain, there was simply no objective evidence that the pain he sustained met the legal threshold requirement of "substantial pain."

Alhanah did not describe the degree of pain or the length of time he experienced pain. Instead, Alhanah stated that he <u>did not</u> have physical pain for the entire 10 days, but rather, felt emotional pain because he was "scare[d]." (A.195). However, <u>emotional</u> pain is not probative or relevant in assessing <u>physical</u>

injury.  Moreover, Alhanah's testimony is devoid of any home pain management remedies, such as ibuprofen or ice packs to reduce swelling, to demonstrate that he suffered "substantial pain."  This evidence was insufficient to establish that Alhanah suffered the type of pain — either in duration or degree — that meets the statutorily-required objective threshold.

Courts have reversed for failure to make out "substantial pain" where, as here, the only articulated evidence of pain is the complainant's conclusory testimony. For example, in Matter of Jose B., the evidence was insufficient where the appellant hit the complainant with a "closed fist, on the arm and shoulder" and "several times on the arm and back" and where the complainant testified that the pain he felt for several days afterward "interfered with his performance of household chores."  47 A.D.3d 461, 461-62 (1st Dep't 2008).  Notably, the complainant there did seek medical attention and records indicated that he took Motrin for pain. Id. at 462.

The evidence was likewise insufficient in People v. Windbush, where the complainant testified that "the defendant and his codefendants surrounded him, punched him in the head and ribs, grabbed his arm, and attempted, without success, to remove a ring from the middle finger of his right hand."  163 A.D.2d 591, 592 (2d Dep't 1990).  Even though "the complainant's mouth was bleeding," there was "no indication that any of his activities were curtailed

44

and his claim that he could not lift his arm was not further explained." Id. (emphasis added); see also People v. Jimenez, 55 N.Y.2d 895 (1982) (one centimeter cut above the victim's lip was insufficient to establish physical injury); People v. Young, 99 A.D.3d 739, 740 (2d Dep't 2012) (evidence insufficient where complainant received Tylenol at hospital and "experienced generalized pain and soreness" but no testimony about pain's degree or duration, besides that it "intensified" when she returned to work one week after incident); People v. Williams, 46 A.D.3d 1115, 1116-17 (3d Dep't 2007) (evidence insufficient where defendant elbowed complainant's cheek, causing him to fall, despite "severe sharp pain in his cheek area and some swelling" and "pain last[ing] for about two days and the swelling subsid[ing] after a couple of days"); People v. Balan, 25 Misc.3d 88, 89 (App. Term 1st Dep't 2009) (insufficient evidence of physical injury where defendant kicked and slapped complainant, who experienced an "unspecified level of pain, as well as swelling and 'redness' to her face and legs, for about a week, but neither sought medical attention nor took photographs").

The evidence adduced here was even more scant than that presented in the above-cited cases. As such, the prosecution also fell below the threshold requirement for "impairment of physical condition," which requires significant curtailment of function. Although this Court is barred from addressing the issue of